UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**RONALD JOHNSON,**

        Plaintiff,

vs.

**ASTON CARTER, INC.**, **AEROTEK, INC.** and **ALLEGIS GROUP, INC.,**
jointly and severally,

        Defendants.

Case No.

Hon.

_____/

Jack W. Schulz (P78078)
SCHULZ LAW PLC
PO Box 44855
Detroit, MI 48244
(313) 246-3590
jackwschulz@gmail.com
*Attorneys for Plaintiff*
_____/

## COMPLAINT

There is no other civil action pending in this Honorable Court or any other Court arising out of the same transaction and occurrence.

**NOW COMES** Plaintiff, **RONALD JOHNSON**, for his Complaint against Defendants Aston Carter, Inc., Aerotek, Inc., and Allegis Group, Inc. stating the following:

## INTRODUCTION

1. Plaintiff Ronald Johnson, an African American, was a recruiter with Defendants until his constructive discharge after Defendants deliberately created hostile working conditions hoping Plaintiff would quit. Defendants' hostility arose after Plaintiff reported that his supervisor made objectively inappropriate racial comments and jokes to Plaintiff. After this report, Plaintiff was set up to fail and had his training period extended costing him a significant raise. Further, Defendants took no action towards Plaintiff's complaints and, instead, told him the complaints regarding his supervisor were "unfathomable"; then later outright denied Plaintiff even made them.

Within this Complaint, Plaintiff alleges he was subjected to a hostile workplace, discriminated against, and constructively discharged due his race and in retaliation for protected activity in violation of 42 U.S.C. § 1981 and Michigan's Elliot-Larsen Civil Rights Act, M.C.L. § 37.2101 *et. seq.*

## PARTIES

2. Plaintiff Ronald Johnson is an African American individual who was employed with the Defendants and resides in Harrison Township, Michigan, Macomb County.

3. Defendant Aston Carter, Inc. is a foreign profit corporation organized under the laws of the State of Maryland and operates within the State of Michigan. Plaintiff was an employee of Defendant.

4. Defendant Aerotek, Inc. is a foreign profit corporation organized under the laws of the State of Maryland and operates within the State of Michigan. Plaintiff was an employee of Defendant.

5. Defendant Allegis Group, Inc. is a foreign profit corporation organized under the laws of the State of Maryland and operates within the State of Michigan. Defendants Aston Carter, Inc. and Aerotek, Inc. are subsidiaries and affiliates of Defendant Allegis Group, Inc.

## JURISDICITON AND VENUE

6. This Court has original jurisdiction of Plaintiff's claims under to 42 USC § 1981 pursuant to 28 U.S.C. § 1331.

7. Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's state law claims.

8. This Court is the proper venue pursuant to 28 U.S.C. § 1391(b).

9. Plaintiff has filed a charge with the Equal Employment Opportunity Commission alleging racial discrimination and retaliation. Plaintiff will seek to amend his complaint once issued the right to sue pursuant to Title VII of the Civil Right Act of 1964, 42 U.S.C. §2000 *et seq.*

## GENERAL ALLEGATIONS

10. Ronald Johnson ("Plaintiff" or "Johnson") is African American, and a member of a protected class based on his race.

11.     Plaintiff began working for Defendant Aston Carter, Inc. and Aerotek, Inc. as a recruiter in April 2021.

12.     On information and belief, Defendants Aston Carter, Inc. and Aerotek, Inc. are subsidiaries or affiliates of Allegis Group, Inc. (collectively "Defendants")

13.     Upon his hire, Plaintiff was subjected to an initial thirteen-week training period in which he was compensated at a lower hourly rate.  Following the thirteen-week training period, Plaintiff's compensation was to increase significantly to a larger salary plus uncapped commission.

14.     In his training, Plaintiff was assigned to a team supervised by Robert VanDam ("VanDam"), who also served as Plaintiff's trainer.

15.     Van Dam is Caucasian.

16.     In his employment with Defendants, Plaintiff was one of very few minorities.

17.     Notably, Plaintiff's employment with Defendants occurred during the Covid-19 pandemic. Initially, Plaintiff was notified that he would be able to work remotely from home. Later, Plaintiff was instructed to that he needed to be in the office three days a week, then finally full-time in-person.

18.     During the period Plaintiff was told that he was required to work onsite, he participated in several zooms where Caucasian comparable employees were allowed to work remotely from home without issue.

4

19. Nonetheless, Plaintiff excelled during his training period and frequently received emails approving of his performance.

20. On or around July 7, 2021, Plaintiff was invited to a social function with several coworkers celebrating two employees' promotions within the company. Defendants' Director/District Manager, Christopher Anthony ("Director Anthony") allowed employees to leave early to attend the event at the offsite bar.

21. During the social function, Plaintiff's supervisor/trainer, VanDam, made racially comments and jokes towards African Americans. In the comments, VanDam used the word "n***a."

22. Later that night, after leaving the event, Plaintiff mentioned the incident to an African American coworker, Keith Thomas ("Thomas"), who was equally appalled by the comments. Thomas noted another incident which he interpreted to be racist regarding another supervisor. Also, that Thomas had previously reported the incident to Director Anthony.

23. On or before July 8, 2021, following the call with Plaintiff, Thomas contacted Director Anthony to report what had happened to Plaintiff.

24. On July 8, 2021, Plaintiff spoke with Director Anthony and explained to him that his supervisor told racially inappropriate jokes and comments, including the use of "n***a", and it made Plaintiff extremely uncomfortable. During the call, Director

Anthony stated that he would contact VanDam. Plaintiff responded that he would contact VanDam and explain that the comments were inappropriate.

25. Plaintiff called VanDam multiple times but received no response. After, Plaintiff notified Director Anthony that he was unable to reach VanDam.

26. VanDam's first response to Plaintiff's contacts came in the form of a text where VanDam referred to Plaintiff as "homie." On information and belief, VanDam never referred to Caucasian employees as "homie."

27. Following Plaintiff's report, the work situation became extremely hostile. VanDam ignored most of Plaintiff's contacts.

28. Additionally, for the final week of Plaintiff's training period, Defendants intentionally assigned Plaintiff to work with an employee who had already put in their two weeks resignation and was not putting in full effort. This employee ignored Plaintiff's emails and text messages for weeks. As a result, Plaintiff's performance dropped for this individual week.

29. Around this time, Director Anthony moved Plaintiff from VanDam's supervision to the supervision of another account manager, Morgan Burstein ("Burstein"). However, even after the move, Plaintiff remained on VanDam's team and worked with/near VanDam nearly every day. Notably, Plaintiff did not request to be moved, Plaintiff merely requested to be treated decently by management within the company.

6

30. Plaintiff notified VanDam of his switch to Burstein's team and the reasoning. VanDam responded that he would "talk to Burnstein."

31. On information and belief, VanDam was not disciplined at this point, if ever, for his racially inappropriate comments or retaliation.

32. Around this time, Defendants for the first time took issue Plaintiff taking night classes as a student outside of his employment.

33. Despite months of excellent performance, Defendants notified Plaintiff that they were extending his training period. Defendants pretextually justified this adverse action by pointing *only* to Plaintiff's performance during the final week. As a result, Plaintiff was denied a significant promotion and increase in wages. Plaintiff had never received any previous notice of performance issues.

34. On information and belief, the decision to extend Plaintiff's training period was either made or in consultation with VanDam.

35. Plaintiff's extended training was objectively shocking as he had received multiple emails congratulating him on his performance *prior* to his report of his supervisor's racist comments and the subsequent retaliation.

36. It was obvious to Plaintiff that Defendants were attempting to get Plaintiff to resign as the work environment became increasingly hostile and nothing was being done to address his reports regarding VanDam.

37.     Following this extension, Defendants never discussed removing him from his extended training period or his performance.

38.     Feeling hopeless about the situation, Plaintiff put in his two weeks' notice of resignation on July 30, 2021.

39.     The workplace remained hostile following Plaintiff's submitted two weeks resignation. As a result, Plaintiff requested to work from home to avoid the harassment. However, this request was ignored.

40.     A few days later, Plaintiff contacted Human Resources Manager Juan McCausland ("HR McCausland"). During the call, HR McCausland was dismissive of Plaintiff's claims regarding the VanDam and the hostile work environment saying they were "hard to fathom." Further, HR McCausland began yelling at Plaintiff. Plaintiff informed HR McCausland that he was uncomfortable speaking with him after essentially being called a liar.

41.     Once it became obvious Plaintiff felt Defendants actions were unlawful, Defendants switched into a complete damage control mode.

42.     On Plaintiff's final day of employment, Plaintiff was contacted by HR McCausland for an exit interview. During the call, Plaintiff again discussed the racially inappropriate comments specifically made by VanDam, how he felt things became hostile following his report of them, and that the extended training was unjustified and evidence of further retaliation. Plaintiff also noted how VanDam's "homie" comment

8

made him feel as the first contact after reporting his racially inappropriate comments. During the call, HR McCausland gaslit Plaintiff and, instead, prodded Plaintiff as to what evidence he possessed for liability purposes.

43. On August 27, 2021, Plaintiff submitted a charge with the EEOC alleging hostile workplace and constructive discharge due to racial discrimination and retaliation.

44. In response to Plaintiff's EEOC charge, Defendants submitted a position statement denying that Plaintiff ever even reported that VanDam made racist comments. Shockingly, Defendants' position statement was authored by HR McCausland.

45. Plaintiff has not been issued a right to sue by the EEOC for his claims pursuant to Title VII, however, he will amend this complaint once he has obtained the right to sue pursuant to Title VII.

## COUNT I
## RACIAL DISCRIMINATION - 42 U.S.C. § 1981

46. All preceding paragraphs are incorporated by reference.

47. Plaintiff is a member of a protected minority class on the basis of his race.

48. As an employee, Plaintiff had a contractual employment relationship with Defendants.

49. During the course of Plaintiff's employment with Defendants, Defendants violated Plaintiff's rights by depriving him of his right to the enjoyment of all benefits, privileges, terms and conditions of employment "as is enjoyed by white citizens," in violation of 42 U.S.C. § 1981(b), as amended.

50. Plaintiff was treated differently and held to a different standard than his Caucasian comparators.

51. Plaintiff was subject to unwelcome racial comments by his direct supervisor.

52. The work environment was abusive for Plaintiff.

53. The racial comments, racial animus, and discriminatory treatment Plaintiff was subjected to was severe enough to alter the conditions of his employment.

54. Defendants were aware of the harassment and abuse Plaintiff was facing and failed to act or otherwise inadequately addressed the situation.

55. Defendants deliberately created intolerable working conditions with the intention of forcing Plaintiff to quit.

56. The hostile working conditions caused Plaintiff to feel compelled to resign.

57. Plaintiff alleges that the hostile work environment and his constructive discharge are in violation of his right to make and enforce contracts pursuant to 42 U.S.C. § 1981.

58. As a direct and proximate result of Defendants' unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss vacation and sick days, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation and loss of the

ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and has incurred attorney fees.

## COUNT II
## RETALIATION - 42 U.S.C. § 1981

59. All preceding paragraphs are incorporated by reference.

60. Plaintiff engaged in activity protected by 42 U.S.C. § 1981 when he complained of the perceived racist comments made by his direct supervisor.

61. Plaintiff engaged in activity protected by 42 U.S.C. § 1981 when he complained of the perceived hostile work environment and racial discrimination he was subjected to by Defendants subsequent to his complaints.

62. Plaintiff engaged in activity protected by 42 U.S.C. § 1981 when he participated in the investigation of complaints of racial discrimination against Defendants.

63. Defendants retaliated against Plaintiff due to this protected activity.

64. Defendants began holding Plaintiff's performance to a different standard in retaliation for this protected activity.

65. Defendants extended his training period in retaliation for this protected activity.

66. Defendants denied Plaintiff a promotion to a salaried employee due to this protective activity.

67. Defendants constructively discharged Plaintiff in retaliation of Plaintiff's protected activity.

68. Defendants' actions, as discussed above, violate 42 U.S.C. § 1981.

69. As a direct and proximate result of Defendants' unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss vacation and sick days, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and has incurred attorney fees.

## COUNT III
## RACIAL DISCRIMINATION - ELLIOT-LARSEN CIVIL RIGHTS ACT, M.C.L. § 37.2101 *et. seq.*

70. All preceding paragraphs are incorporated by reference.

71. At all relevant times, Plaintiff and Defendants were covered by and within the meaning of the Michigan Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq*.

72. Defendants treated and disciplined Plaintiff different than similarly situated Caucasian employees.

73. Plaintiff faced severe harassment in the workplace due to his race.

74. The harassment and discriminatory treatment Plaintiff was subjected to was severe enough to alter the conditions of his employment.

75. Plaintiff's race was a factor that made a difference in Defendants' decision to extend his training period, deny him a promotion to a salaried positions, and constructively discharge Plaintiff.

76. Defendants' actions were intentional, with reckless indifference and in disregard of Plaintiff's rights and sensibilities.

77. As a direct and proximate result of Defendants' unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss vacation and sick days, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation, and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and incurred substantial liability for attorney fees.

## COUNT IV
## RETALIATION - ELLIOT-LARSEN CIVIL RIGHTS ACT, M.C.L. § 37.2101 *et. seq.*

78. All preceding paragraphs are incorporated by reference.

79. Plaintiff engaged in protected activity when he notified Defendants that his supervisor had made racist comments and that the work environment for him was hostile.

80. Plaintiff engaged in protected activity when he complained of racial discrimination he was perceived he was subjected to in the workplace.

81. Plaintiff engaged in protected activity when he participated in the investigation of complaints of racial discrimination against Defendants.

82. Defendants retaliated against Plaintiff due to this protected activity.

83. Defendants began holding Plaintiff's performance to a different standard in retaliation for this protected activity.

84. Defendants deliberately created intolerable working conditions effectively constructively discharging Plaintiff in retaliation of Plaintiff's protected activity.

85. As a direct and proximate result of Defendants' unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss of vacation and sick days, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation, and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and incurred substantial liability for attorney fees.

## **REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiff requests that this Honorable Court:

a. Declare that the aforementioned practices and actions of Defendant constitute unlawful practices in violation of 42 USC § 1981 and the ELCRA;

b. Award Plaintiff all lost wages and benefits, past and future, to which he is entitled;

c. Award Plaintiff appropriate equitable relief;

d. Award Plaintiff compensatory damages;

  e.  Award Plaintiff punitive damages;

  f.  Award Plaintiff reasonable attorney fees, costs and interest; and

  g.  Award such other relief as this Court deems just and proper.

           Respectfully submitted,

           By: /s/ Jack W. Schulz
           Jack W. Schulz (P78078)
           SCHULZ LAW PLC
           PO Box 44855
           Detroit, MI 48244
           (313) 246-3590
           jackwschulz@gmail.com
           *Attorney for Plaintiff*

DATE:  January 5, 2022