UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONALD JOHNSON,

        Plaintiff,                               Civil Action No. 22-CV-10025

vs.                                        HON. BERNARD A. FRIEDMAN

ASTON CARTER, INC., et al.,

        Defendants.
_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

This matter is presently before the Court on defendants' motion to dismiss. (ECF No. 10). Plaintiff has responded (ECF No. 11) and defendants have replied (ECF No. 12). Pursuant to E.D. Mich. LR 7.1(f)(2), the Court shall decide this motion without a hearing. For the following reasons, the Court shall grant the motion in part and deny it in part.

### I.    Background

This is an employment discrimination and retaliation case. Plaintiff Ronald Johnson, who is African-American, is a former employee of defendants Aston Carter, Inc. ("Aston Carter") and Aerotek, Inc. ("Aerotek"). (ECF No. 9, PageID.52-53, ¶¶ 2-4). Aston Carter and Aerotek are subsidiaries and affiliates of defendant Allegis Group, Inc. ("Allegis Group"). (*Id.*, PageID.53, ¶ 5). Plaintiff alleges that he began working as a recruiter for Aston Carter and Aerotek in April 2021. (*Id.*, PageID.54, ¶ 10). He states that as a new employee, he was required to complete a thirteen-week training period, during which he was to be compensated at a "lower hourly rate." (*Id.*, ¶ 12). After completing the training period, plaintiff's "compensation was to increase significantly to a larger salary and uncapped commission." (*Id.*).

Plaintiff's assigned supervisor and trainer during this period was Robert VanDam, who is Caucasian.  (*Id*., ¶¶ 13-14).  Plaintiff further states that he "was one of very few minorities" employed by defendants.  (*Id*., ¶ 15).

Plaintiff alleges that on or about July 7, 2021, he attended an offsite work-related social function.  (*Id*., PageID.55, ¶ 19).  During that event, VanDam allegedly made multiple racist jokes and comments regarding African Americans.  (*Id*., ¶ 20).  Plaintiff states that the following day, he informed defendants' director/district manager, Christopher Anthony, of this incident.  (*Id*., ¶¶ 22-23).  Although Anthony offered to contact VanDam, plaintiff indicated that he would do so himself.  (*Id*., PageID.56, ¶ 23).  After various unsuccessful attempts to reach him, VanDam allegedly responded with a text message in which he referred to plaintiff as "homie," a term that VanDam allegedly did not use with his white colleagues.  (*Id*., ¶ 25).

Plaintiff states that following his conversation with Anthony and subsequent exchange with VanDam, his work environment "became extremely hostile."  (*Id*., ¶ 26).  For example, plaintiff states that he was ignored by VanDam, given an undesirable work assignment, and reprimanded for taking night classes.  (*Id*., PageID.56-57, ¶¶ 26-27, 31).  He further alleges that "[d]espite months of excellent performance," his training period was extended, indefinitely delaying his promotion to a salaried position.  (*Id*., PageID.57-58, 65, ¶¶ 32-34, 36, 91).  Plaintiff felt it was "obvious . . . that Defendants were attempting to get [him] to resign."  (*Id*., PageID.57, ¶ 35).  Plaintiff adds that although he was removed from VanDam's supervision, the two still worked together "nearly every day" and, to the best of his knowledge, VanDam was never disciplined nor was any action taken to address plaintiff's complaint.  (*Id*., PageID.56-57, ¶¶ 28, 30, 35).

Plaintiff alleges that in early August 2021 he spoke with Human Resources

2

Manager Juan McCausland regarding the racist comments and retaliatory conduct.  (*Id.*, PageID.58, ¶ 39).  McCausland was allegedly "dismissive" and indicated that plaintiff's claims were "hard to fathom."  (*Id.*).  Plaintiff states that, "feeling hopeless about the situation," he resigned on or about August 13, 2021.  (*Id.*, ¶ 37).  On August 27, 2021, plaintiff submitted a charge with the Equal Employment Opportunity Commission ("EEOC"), and on February 3, 2022, he was issued a right-to-sue letter.  (*Id.*, PageID.59, ¶¶ 42-44).

Plaintiff's six-count amended complaint raises racial discrimination and retaliation claims under 42 U.S.C. § 1981; Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e; and Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), MICH. COMP. LAWS § 37.2101, *et seq.*  (*Id.*, PageID.59-66).

In the instant motion, defendants contend that plaintiff's amended complaint should be dismissed in its entirety or, alternatively, in part.  First, defendants assert that plaintiff has failed to state a claim against defendant Allegis Group as to all counts because he has not alleged that he was an employee of Allegis Group, nor has he pled any facts that would allow Allegis Group to be held liable for the acts of its subsidiaries.  (ECF No. 10, PageID.74). Second, defendants contend that plaintiff has failed to exhaust his administrative remedies as to defendants Aston Carter and Allegis Group, and therefore cannot file suit under Title VII against these two defendants.  (*Id.*).  Finally, defendants argue that plaintiff has failed to state claims of race discrimination or retaliation under § 1981, Title VII, and the ELCRA as to any of the defendants, as no materially adverse action was taken against him.  (*Id.*, PageID.75, 82-83).

## II.    *Legal Standard*

To survive a motion to dismiss, the challenged portions of the amended complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible

on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted).

Two principles underlie this standard:

> First, the tenet that a court must accept as true all of the allegations
> contained in a complaint is inapplicable to legal conclusions.
> Threadbare recitals of the elements of a cause of action, supported
> by mere conclusory statements, do not suffice. Second, only a
> complaint that states a plausible claim for relief survives a motion
> to dismiss. Determining whether a complaint states a plausible
> claim for relief will . . . be a context-specific task that requires the
> reviewing court to draw on its judicial experience and common
> sense. But where the well-pleaded facts do not permit the court to
> infer more than the mere possibility of misconduct, the complaint
> has alleged—but it has not show[n]—that the pleader is entitled to
> relief.

*Id*. at 678-79 (2009) (internal quotation marks and citations omitted).  The Court shall address

each of defendants' requests for dismissal in turn.

### III.    *Analysis*

#### A.    *Failure to State a Claim against Defendant Allegis Group*

In the amended complaint, plaintiff does not allege that he was employed by

defendant Allegis Group when the relevant conduct occurred.  Rather, he alleges that he was

employed by defendants Aerotek and Aston Carter, which are "subsidiaries and affiliates" of

defendant Allegis Group.  (ECF No. 9, PageID.53-54, ¶¶ 5, 10-11).

The Sixth Circuit has explained:

> It is a general principle of corporate law deeply ingrained in our
> economic and legal systems that a parent corporation (so-called
> because of control through ownership of another corporation's
> stock) is not liable for the acts of its subsidiaries.  However, . . .
> Michigan courts will pierce the corporate veil and hold the parent
> company liable for acts of a subsidiary when there is such a

> complete identity between the defendant and the corporation as to
> suggest that one was simply the alter ego of the other. . . . There
> must be such a unity of interest and ownership that the separate
> personalities of the corporation and its owner cease to exist, and the
> circumstance must be such that adherence to the fiction of separate
> corporate existence would sanction a fraud or promote injustice.

*Precision, Inc. v. Kenco/Williams, Inc.*, 66 F. App'x 1, 4-5 (6th Cir. 2003) (applying Michigan law) (internal quotation marks and citations omitted). As to Title VII claims specifically, the Sixth Circuit has stated that "a parent is not responsible for a subsidiary's Title VII violations absent special circumstances. The factors . . . court[s should] consider[] are the degree of (1) interrelated operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership." *Anwar v. Dow Chem. Co.*, 876 F.3d 841, 852 (6th Cir. 2017) (internal quotation marks and citations omitted).

In the instant motion, defendants contend that plaintiff has not presented any factual basis for holding Allegis Group liable for the acts alleged in this case. (ECF No. 10., PageID.79). They argue that he has failed to "describe any conduct attributable to Allegis Group or any of its employees, much less conduct that might support the conclusion that there is such a complete identity between Allegis Group and Aerotek or Aston Carter that one could be construed the alter ego of the other." (*Id.*, PageID.80) (internal quotation marks omitted). Defendants therefore request that all claims against Allegis Group be dismissed. (*Id.*). In response, plaintiff argues that in the amended complaint he "noted that all three entities, shall be collectively referred to as 'Defendants.'" (ECF No. 11, PageID.104). In doing so, plaintiff contends, he "has plead substantial facts attributable to Defendant Allegis Group" such that the claims against it should survive defendants' motion to dismiss. (*Id.*).

The Court concludes that plaintiff has failed to state a plausible claim against

5

Allegis Group.  The amended complaint includes no allegations regarding the relationship between Allegis Group, Aerotek, and Aston Carter, beyond stating that the latter two are "subsidiaries and affiliates" of the former.  There is no indication that Aerotek and Aston Carter are simply alter egos of Allegis Group, nor is there any suggestion that they have interrelated operations, common management, or centralized control of labor relations.  As plaintiff has failed to state that he was ever employed by Allegis Group and failed to provide a plausible basis for disregarding the corporate form, all claims against defendant Allegis Group shall be dismissed.

### B.    *Failure to Exhaust Administrative Remedies Required under Title VII as to Defendants Aston Carter and Allegis Group*

Defendants next argue that Counts III and IV should be dismissed as to defendants Aston Carter and Allegis Group, as plaintiff has failed to exhaust his administrative remedies under Title VII.  Because, as just discussed, all claims against defendant Allegis Group are dismissed, the Court shall address defendants' Title VII exhaustion arguments only as to defendant Aston Carter.

The Sixth Circuit has explained:

> It is well settled that a plaintiff must satisfy two prerequisites before filing a Title VII action in federal court:  (1) timely file a charge of employment discrimination with the EEOC; and (2) receive and act upon the EEOC's statutory notice of the right to sue ("right-to-sue letter").  The proper exhaustion of administrative remedies gives the Title VII plaintiff a green light to bring an employment-discrimination claim in court.

*Granderson v. Univ. of Mich.*, 211 F. App'x 398, 400 (6th Cir. 2006).  Title VII requires "potential litigants to file charges with the EEOC within 300 days of the alleged unlawful employment action."  *Amini v. Oberlin Coll.*, 259 F.3d 493, 497 (6th Cir. 2001).

Here, plaintiff "concedes that his EEOC charge [w]as only submitted against

Aerotek." (ECF No. 11, PageID.106; ECF No. 10-1 (Ex. A, EEOC Charge)).  However, because "less than 300 days have passed since the adverse actions contemplated by this lawsuit," plaintiff indicates that he "may still file a timely charge of discrimination" against Aston Carter.  (*Id*.). He therefore asks that the relevant counts be dismissed without prejudice.  (*Id*.).  The Court agrees.  Since the 300-day deadline for filing an EEOC complaint against Aston Carter has not yet expired, plaintiff's Title VII claim against this defendant shall be dismissed without prejudice.

    **C.**     *Failure to State Claims of Race Discrimination or Retaliation under Title VII, § 1981, and the ELCRA*

        The legal standards governing discrimination and retaliation claims under Title VII, § 1981, and the ELCRA are the same.  *See Schuette v. Rand*, No. 18-CV-10497, 2020 WL 7664775, at *19 (E.D. Mich. Dec. 23, 2020) (as to retaliation claims); *Young v. CSL Plasma, Inc.*, No. 15-CV-10080, 2016 WL 1259103, at *2 (E.D. Mich. Mar. 31, 2016) (as to racial discrimination claims).  As relevant here, a plaintiff may establish a prima facie case of employment discrimination by showing that "(1) he is a member of a protected class; (2) he suffered an adverse employment action; (3) he was qualified for the position in question; and (4) he was treated differently from similarly situated individuals outside of his protected class." *Smith v. City of Salem, Ohio*, 378 F.3d 566, 570 (6th Cir. 2004).  "The elements of a retaliation claim are similar but distinct from those of a discrimination claim."  *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014).  To establish a prima facie case of retaliation, a plaintiff must demonstrate that "(1) he engaged in [protected] activity . . . ; (2) his exercise of such protected activity was known by the defendant; (3) thereafter, the defendant took an action that was materially adverse to the plaintiff; and (4) a causal connection existed between the protected

activity and the materially adverse action." *Id*.

In the instant motion, defendants contend that plaintiff has failed to plausibly allege racial discrimination or retaliation claims under Title VII, § 1981, or the ELCRA, as the conduct alleged does not amount to an adverse employment action. Defendants do not raise arguments regarding any of the other elements necessary to establish either type of claim under the three statutes.

The Sixth Circuit has explained:

> Common to both the employment discrimination and retaliation claims is a showing of an adverse employment action, which is defined as a materially adverse change in the terms and conditions of [plaintiff's] employment. A bruised ego, a mere inconvenience or an alteration of job responsibilities is not enough to constitute an adverse employment action. Examples of adverse employment actions include firing, failing to promote, reassignment with significantly different responsibilities, a material loss of benefits, suspensions, and other indices unique to a particular situation.

*Smith*, 378 F.3d at 575-76 (internal quotation marks and citations omitted). Further, even temporary negative employment actions may be considered adverse, as the plain language of Title VII encompasses "*any kind* of adverse action." *White v. Burlington N. & Santa Fe Ry. Co.*, 364 F.3d 789, 801-02 (6th Cir. 2004) (emphasis in original). In the context of retaliation claims, "[a]n action is 'materially adverse,' . . . when it would "dissuade[] a reasonable worker from making or supporting a charge of discrimination." *Lahar v. Oakland Cnty.*, 304 F. App'x 354, 357 (6th Cir. 2008) (quoting *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006)) (internal quotation marks omitted). "[N]ormally petty slights, minor annoyances, and simple lack of good manners will not create such deterrence.".

In the present case, plaintiff states that he was subjected to a standard, thirteen-week training period upon being hired by Aston Carter and Aerotek. (ECF No. 9, PageID.54, ¶

12).   During this training period, he was compensated at a lower hourly rate.   (*Id.*).   Upon completion of the thirteen weeks, his "compensation was to increase significantly to a larger salary plus uncapped commission."   (*Id.*).   However, plaintiff alleges that after he reported VanDam's allegedly racist comments, (1) his work environment became hostile; (2) VanDam ignored plaintiff; (3) defendants took issue, for the first time, with plaintiff taking night classes; (4) defendants intentionally gave plaintiff a poor work assignment for his final week of training; (5) defendants disregarded plaintiff's complaints and failed to discipline VanDam; and (6) defendants indefinitely extended plaintiff's training period.   (*Id.*, PageID.56-58, ¶¶ 26-27, 30-31, 32-34, 39).   Further, plaintiff alleges that prior to the incident with VanDam, plaintiff had not been made aware of any performance issues and, to the contrary, had received multiple congratulatory emails regarding his performance.   (*Id.*, PageID.57, ¶¶ 32, 34).   Plaintiff states that, in effect, he was constructively discharged due to his race and in retaliation for reporting VanDam.   (*Id.*, PageID.52, ¶ 1).

First, the Court does not believe that plaintiff has plausibly alleged constructive discharge.   The Sixth Circuit has explained:

> A constructive discharge occurs when the employer, rather than acting directly, deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation.   To demonstrate a constructive discharge, Plaintiff must adduce evidence to show that 1) the employer deliberately created intolerable working conditions, as perceived by a reasonable person, and 2) the employer did so with the intention of forcing the employee to quit.

*Laster*, 746 F.3d at 727-28 (internal quotation marks and citations omitted).   "The plaintiff must show more than a Title VII violation to prove constructive discharge, so the fact that plaintiff may have proven a hostile work environment is not enough by itself to prove constructive

discharge also." *Moore v. KUKA Welding Sys. & Robot Corp.*, 171 F.3d 1073, 1080 (6th Cir. 1999). "A plaintiff who advances such a . . . claim must show working conditions so intolerable that a reasonable person would have felt compelled to resign." *Pa. State Police v. Suders*, 542 U.S. 129, 147-48 (2004) (referring to the alleged conduct as "a 'worse case' harassment scenario, harassment ratcheted up to the breaking point"). Although not an explicit firing or demotion, a constructive discharge qualifies as an adverse employment action. *See Pa. State Police*, 542 U.S. at 142-43.

Here, the alleged conduct does not amount to a worst case harassment scenario, nor has plaintiff demonstrated that defendants acted with the intention of forcing him to quit. The facts alleged in the present case fail to compare with those alleged in *Pa. State Police* and *Moore* – cases in which constructive discharge was at least plausibly alleged. In both cases, the plaintiffs alleged continuous and extreme harassing conduct. *See Pa. State Police*, 542 U.S. at 134-35 (involving allegations of sex discrimination); *Moore*, 171 F.3d at 1077-78 (involving allegations of race discrimination). In *Moore*, for example, the plaintiff alleged repeated racist language in the workplace, some of which was violent in nature; being assigned demeaning tasks; and a coordinated effort to isolate him, leaving plaintiff as the only employee in his department. *Id*. Even so, the Sixth Circuit indicated that Moore's constructive discharge claim "present[ed] a close question." *Id*. at 1080. In contrast here, the facts alleged simply do not rise to the level of harassment necessary to state a plausible claim of constructive discharge.

Further, most of the alleged explicit conduct does not rise to the level of an adverse employment action. While plaintiff's allegations indicate that additional tension arose after plaintiff reported VanDam's allegedly racist comments, "such predictable tension is not the type of adverse employment action prohibited by [the relevant statutes'] retaliation clause[s]." *White*,

364 F.3d at 796 (internal quotation marks omitted).  Similarly, because plaintiff does not allege that the complained-of final-week-of-training work assignment was accompanied by "salary or work hour changes," it would "not ordinarily constitute [an] adverse employment decision[]." *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 885 (6th Cir. 1996).

However, the Court concludes that the indefinite extension of plaintiff's thirteen-week training period plausibly qualifies as an adverse employment action.  Accepting the facts alleged as true, plaintiff would have received a salaried position, a significant pay increase, and uncapped commission payments but for defendants' decision to extend his training period, amounting to a failure to promote and material loss of benefits.   Further, the professional and financial consequences of this decision would likely dissuade a reasonable employee from making or supporting a charge of discrimination.  The Sixth Circuit has stated that actions that generally fall short of a material change in employment "may well deter a reasonable employee from complaining about discrimination" if such actions "significantly impact an employee's wages or professional advancement."  *Halfacre*, 221 F. App'x at 432-33.  Although defendants characterize the extended training period as a mere "delay," they do not contend that they ever set an end date to the extension.  (ECF No. 10, PageID.83-84; ECF No. 12, PageID.118).  Under the circumstances, the Court concludes that indefinitely extending plaintiff's training period, and thereby placing him in an insecure and underpaid position, constitutes sufficiently adverse conduct for plaintiff's discrimination and retaliation claims to proceed as this stage in the litigation.

## IV.    *Conclusion*

Accordingly,

11

IT IS ORDERED that the portion of defendants' motion seeking to dismiss Counts I-VI against defendant Allegis Group is granted.

IT IS FURTHER ORDERED that the portion of defendants' motion seeking to dismiss Counts III and IV as to defendant Aston Carter is granted.  Counts III and IV are dismissed without prejudice as to that defendant.

IT IS FURTHER ORDERED that the portion of defendants' motion seeking to dismiss Counts I-VI as to defendant Aerotek and Counts I, II, V, and VI as to defendant Aston Carter is denied.

                                    s/Bernard A. Friedman_____
                                    BERNARD A. FRIEDMAN
Dated:  May 26, 2022                SENIOR UNITED STATES DISTRICT JUDGE
        Detroit, Michigan